**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STEPHEN JACKSON, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF WESTERN SPRINGS, *et al.*, <br><br> Defendants. | Case No. 14 C 3414 <br><br> Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Defendants in this case have moved to dismiss Plaintiff Stephen Jackson's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure [ECF Nos. 36, 38, 39]. For the reasons stated herein, the Motions are granted.

**I. BACKGROUND**

Plaintiff Stephen Jackson ("Jackson") is a real estate professional and citizen of the Village of Western Springs, Illinois. He brings this civil rights suit against the Village and more than twenty other Defendants that include Village officials, private attorneys and their respective law firms, and other real estate professionals. According to the Complaint, Jackson bought property in the Village in 2000. Since then, another property near Jackson's has been rezoned six times, which

has resulted in various businesses and buildings occupying the nearby property.

The 100-page, 447-paragraph Complaint is hard to follow, but it appears that all of Jackson's claims are related to these zoning decisions and the Defendants' activities surrounding the decisions. Jackson alleges that the zoning decisions were made improperly and in a way that violated his First Amendment rights of free speech, free association, and freedom to petition the government for redress, along with his due process and equal protection rights under the Fourteenth Amendment. In addition to these federal claims, Jackson also brings various state-law claims. First, Jackson alleges that the zoning decisions violated his rights to equal protection and due process under the Illinois Constitution. Second, he alleges that various Defendants have violated Illinois' open meeting and freedom of information statutes. Finally, Jackson brings Illinois common-law claims for conspiracy, nuisance, negligence, and intentional and negligent infliction of severe emotional distress.

Twelve Defendants represented by one attorney move to dismiss Jackson's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1). (ECF No. 36.) Defendant Howard has separate counsel, as do Defendants Edgerton and VanZandt, and all three have joined in the Motion to Dismiss. (ECF Nos. 38 and 39.) Defendants argue that Jackson has no

standing because his federal claims are not ripe and that, because dismissal of those claims is proper, the Court should decline supplemental jurisdiction over Jackson's remaining state-law claims.

## II. LEGAL STANDARD

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Rueth v. E.P.A.,* 13 F.3d 227, 229 (7th Cir. 1993). The Court is not, however, strictly bound by the jurisdictional allegations in the complaint. Instead, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995).

## III. ANALYSIS

As a preliminary matter, the Court first addresses Jackson's assertion in his response that the Court has subject matter jurisdiction in this case on diversity grounds under 28 U.S.C. § 1332. The Complaint contains no allegations of diversity jurisdiction, and even if it did, there is no diversity in this case because Jackson has alleged that both he and a good number

of Defendants are Illinois citizens. And, whether jurisdiction is based on diversity or the presence of a federal question, Jackson must still satisfy Article III's standing requirements.

Article III of the U.S. Constitution requires a case or controversy before the exercise of federal judicial power. *Sprint Spectrum L.P. v. City of Carmel,* 361 F.3d 998, 1002 (7th Cir. 2004). The ripeness doctrine is an important element of the case or controversy requirement, and part of the doctrine's rationale is "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.*

In the land-use context, the Supreme Court has "articulated a special ripeness doctrine" that is slightly different from the traditional "ripeness requirements drawn from Article III." *Forseth v. Vill. of Sussex,* 199 F.3d 363, 368 & n.7 (7th Cir. 2000) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 193–94 (1985)). This special ripeness doctrine precludes "federal courts from adjudicating land disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Id.* The doctrine's applicability does not differ depending on how a landowner titles his claims. "'Labels do not

matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court.'" *Id.* (quoting *River Park, Inc. v. City of Highland Park,* 23 F.3d 164, 167 (7th Cir. 1994)).

Because the Court has subject matter jurisdiction over only those claims that are ripe, the Court must first decide whether Jackson's federal claims are subject to *Williamson's* ripeness requirements. There is no dispute that Jackson has not yet exhausted his state remedies; the parties only dispute whether *Williamson* applies to Jackson's claims. Thus, for each claim, if *Williamson* applies, the claim is not ripe and the Court has no jurisdiction.

### A. Jackson's Federal Due Process Claims

Jackson alleges that the zoning and rezoning of the nearby property, "while not facially a 'taking,' has the same or similar effect by wiping out most, if not all, of the . . . value of the underlying land." (Amended Compl. ¶ 340, ECF No. 33.) According to Counts III and IV of Jackson's Complaint, these zoning decisions violate both his procedural and substantive due process rights under the Fourteenth Amendment.

Although the Seventh Circuit has noted the possibility that a plaintiff might be able to maintain a due process claim not subject to *Williamson's* ripeness doctrine, few if any cases have

ever exempted a due process claim from that doctrine. *Forseth,* 199 F.3d at 368–69; *see also, River Park, Inc.,* 23 F.3d at 167 ("[A] property owner may not avoid *Williamson* by applying the label 'substantive due process' to the claim. So too with the label 'procedural due process.'") (internal citation omitted). Jackson seeks money damages for an alleged reduction of his property's value as a result of excessive zoning regulation. This is the precise kind of claim that belongs in state court. *See, River Park, Inc.,* 23 F.3d at 165 ("Federal courts are not boards of zoning appeals."). Thus, Jackson's due process claims are subject to *Williamson,* and because he has not exhausted his state court remedies, the Court is without jurisdiction over those claims. *Id.* at 165 ("Litigants who neglect or disdain their state remedies are out of [federal] court, period.").

### B. Jackson's Equal Protection Claim

Count I in Jackson's Complaint alleges a class-of-one equal protection violation. According to the Complaint, Jackson "was and is treated differently from other Village residents without [a] rational basis as the Village provides monies, services, advocacy, and entitlements . . . in favor of other residents and fee-paying developers while harming" Jackson. (Amended Compl. ¶ 308.)

The Seventh Circuit "has read *Williamson* broadly, rejecting attempts to label 'takings' claims as 'equal protection' claims and thus requiring 'ripeness.'" *Forseth,* 199 F.3d at 370. But, "*bona fide* equal protection claims arising from land-use decisions can be made independently from a takings claim without being subject to *Williamson* ripeness." *Id.* A plaintiff properly states an equal protection claim in the land-use context if the complaint alleges:

> (1) the malicious conduct of a governmental agent, in other words, conduct that evidences a "spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective," *Esmail v. Macrane,* 53 F.3d 176, 180 (7th Cir. 1995); or (2) circumstances, such as a prayer for equitable relief and a "claim [that] would evaporate if the [governmental body] treated everyone equally," that sufficiently suggests that the plaintiff has not raised "just a single takings claim with different disguises." *Hager v. City of W. Peoria,* 84 F.3d 865, 870 (7th Cir. 1996).

*Id.* at 370–71.

The typical example of an independent equal protection claim in the land-use context involves regulations or zoning decisions targeting and affecting only the plaintiff's land. *See, e.g., id.* (finding a *bona fide* equal protection claim when a village board president engaged in extortion tactics to withhold final approval of the plaintiffs' proposed development unless they agreed to give the president some of the land for his own

personal, private use). Unlike the typical equal protection claim, however, Jackson's property is not the subject of any adverse zoning decisions. Instead, the allegations involve the zoning of a nearby property in which Jackson has no ownership interest.

The allegations in Jackson's Complaint, even taken as true and with inferences drawn in his favor, do not state an equal protection claim that avoids *Williamson*. Jackson alleges that the excessive rezoning of some other property was somehow born of animus toward him and that he was treated differently in such a way that makes him a class of one. The allegations in the Complaint, however, actually demonstrate the lack of a class-of-one equal protection claim. The equal protection allegations are that Defendants received large sums of money and favorable zoning decisions while violating various Illinois laws in zoning and rezoning the nearby property. There are no allegations to support Jackson's conclusory statement that the zoning decisions were in some way done out of spite specifically directed toward him. To the contrary, the Complaint shows that all surrounding property owners were damaged in the exact same way as him — that is, Jackson alleges that all the homes along his street were devalued in the exact same amount by the most recent zoning decision. (Amended Compl. ¶ 143.) Thus, rather than showing he was singled out and treated as a class of one, the zoning

decisions appear to have harmed all the nearby property owners in the same way. Although the Complaint does allege that Defendants received special treatment that Jackson did not, that is not a sufficient basis for an equal protection claim. Jackson has therefore failed to state a *bona fide* equal protection claim that avoids *Williamson*. Thus, the Court has no jurisdiction over the equal protection claim in Count I.

### C. Jackson's First Amendment Claim

Jackson's final federal claim alleges that Defendants violated his free speech rights, free association rights, and his right to petition the government under the First Amendment. Neither party's briefing specifically addresses Jackson's First Amendment claim. Defendants have only moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and there is no doubt that federal courts generally have jurisdiction over First Amendment claims.

A court may, however, dismiss a claim *sua sponte* under Rule 12(b)(6), "provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997). It is indeed evident from Jackson's complaint that he has "failed to state a [First Amendment] claim upon which relief can be granted." *See,* FED. R. CIV. P. 12(b)(6).

Jackson's First Amendment claim is difficult to decipher, but to the extent the Court can understand the allegations, none of them support a First Amendment claim.  First, as for his freedom of association allegation, there is nothing in the Complaint to suggest that Defendants intruded unduly into any of Jackson's "intimate human relationships."  *See, Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–618 (1984).  Nor are there any allegations that Defendants prevented Jackson from meeting or associating with others.  *See, id.*  The only reference to anything related to this claim is an allegation that Defendants suggested Jackson and others attend a workshop on some unstated topic.  The Court fails to see how a suggestion that Jackson attend a workshop violated his freedom of association rights. Thus, Jackson has failed to state a freedom of association claim.

Second, there are similarly no factual allegations to support Jackson's claim based on his freedom to petition the government. Jackson has not alleged that Defendants denied him access to the usual avenues for petitioning the government.  In fact, it appears that Jackson did exercise his petition rights by filing a lawsuit in state court, which he later dropped.

The closest Jackson comes to alleging a violation of his petition rights is his allegation that Defendants "threatened" him as retaliation for his filing a lawsuit in state court. Attached to Jackson's Complaint is a letter that some Defendants

sent to Jackson's attorney in response to Jackson's state lawsuit. The letter states that if Jackson does not withdraw his "meritless case," Defendants would "file a motion for bond in excess of $5,000,000.00 to protect the [Defendants'] significant investments and rights." (Amended Compl. at Ex. A.) Jackson interprets this letter as "retaliation" for his exercising his right to petition the government. Jackson has not cited, and the Court cannot find, any authority to support the notion that a letter between lawyers during litigation constitutes retaliation for a person exercising his petition rights. Thus, Jackson has failed to state a claim based on his freedom to petition the government.

Third, as for the alleged free speech violations, Jackson has not alleged that Defendants have zoned his own property in a way that violates his rights, as is often the case with First Amendment claims in the land-use context. *See, e.g., Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 62–64 (1981) (involving a First Amendment claim based on a zoning ordinance that forbid the plaintiff from allowing nude dancing at his bookstore). Nor has Jackson alleged that his speech was somehow stifled or that he was prevented from disseminating information. The Court's best guess is that Jackson believes his referral to a workshop and Defendants' alleged delay in responding to Freedom of Information Act requests have violated his free speech rights. Again, the

Court is unaware of any authority finding such activities to violate a person's freedom of speech. Jackson has therefore failed to state a claim based on any aspect of the First Amendment.

### D. Jackson's Remaining State-Law Claims

Jackson alleges that the Court has supplemental jurisdiction over his state-law claims under 28 U.S.C. § 1367. Section 1367 states that in any case where "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." As noted above, the Court has no original jurisdiction over any federal claims in this case. This does not, however, mean that the Court must decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Instead, the Court has discretion in deciding whether to retain jurisdiction over the remaining state-law claims. *Wright v. Associated Ins. Co., Inc.,* 29 F.3d 1244, 1250–51 (7th Cir. 1994).

"The general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolve them on the merits." *Id.* at 1251. Federal courts may retain jurisdiction, however, if factors such as judicial economy,

convenience, fairness, and comity point in favor of exercising federal jurisdiction. *Id.*

Here, the factors all weigh in favor of declining supplemental jurisdiction. First, in terms of judicial economy, federal litigation has not proceeded beyond the filing of a Complaint and a Motion to Dismiss. The parties have conducted little, if any, discovery, and the Court has not acquired substantial familiarity with the facts of the case beyond deciding this Motion. *Trs. of Marion Kingdom Hall of Jehovah's Witnesses v. City of Marion,* 638 F. Supp. 2d 962, 979 (S.D. Ill. 2007).

Second, the convenience factor generally weighs in favor of declining jurisdiction unless, under the "no-brainer" exception, the state-law claims are patently frivolous and it is clear how they must be decided. *Van Harken v. City of Chi.,* 103 F.3d 1346, 1354 (7th Cir. 1997). In this case, although the Court has doubts regarding the sufficiency of Jackson's state-law claims, Defendants have not asked the Court to resolve them on the merits, and they do not appear to be so obvious that they can be resolved as a "no-brainer." This factor therefore weighs in favor of declining jurisdiction.

The third and fourth factors, fairness and comity, weigh in favor of declining jurisdiction as well. Remaining in this case are claims based on the Illinois Constitution and various

Illinois statutes. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law" in state court. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966). Moreover, the Court has already ruled that Jackson's federal claims really belong in state court, and it would be a disservice to both parties to separate those claims from the state-law claims when they are all based on the same general allegations of improper zoning decisions.

Thus, the Court declines to exercise supplemental jurisdiction under § 1367(c)(3) over Jackson's remaining state-law claims.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motions to Dismiss [ECF Nos. 36, 38, 39] are granted and Jackson's Complaint is dismissed.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

Date: November 3, 2014